Turley, special J.
delivered the opinion of the court.
On the 11th of April, 1837, the complainants, Welford Farris and Thomas Hampton, bought of Samuel Dickens a tract of land of six hundred and forty acres, situate in the county of Obion, for which they executed to him their joint notes for the sum of two thousand two hundred and forty dollars. The contract of purchase for this tract of land was made by them with one John C. Wilson, agent of Samuel Dickens, who executed to them a bond in the name of Samuel Dickens, as his agent and attorney in fact, binding Dickens to convey the lands upon the payment of the purchase money, under a penalty of two thousand two hundred and forty dollars.
The authority under which Wilson acted in making this contract, and executing this bond, is a letter from Samuel *496 Dickens to him, and which is in the words and figures following:
“Huntingdon, 15th March, 1837: Dear Sir: I have received seventy-two dollars rents, you collected for me for which I kindly thank you, and wish you to rent it out in the same manner and upon the same terms you would your own, or sell.
“One of the gentlemen wants to buy the land; he offers three dollars and fifty cents per acre, payable next Christmas; if you are of opinion that it is a fair price for the land, please to confirm the contract for me; take his bond and give him a bond in my name to make a title when the money is paid. I offered to take three dollars and fifty cents, if he would pay interest from date fall paid. If you can’t now sell it, please sell it to any person who will give a fair price.
“Yours, &c., Samuel Dickens.”
The tract of land referred to in this letter is the one sold to the complainants by Wilson, as attorney in fact for Dickens, and this letter constitutes the only power ever given to Wilson by Dickens to sell it.
The complainants file their bill to rescind and set aside this contract of sale, because the authority under which the agent acted is not validated by a seal, and he, as attorney in fact, executed a bond purporting to bind his principal under seal to convey; which bond it is alleged is, therefore, void and of no obligatory force.
JohnD. Martin, the executor of the will of Samuel Dickens, and the heirs of Dickens, thereupon filed a cross-bill, insisting that the contract of sale is a good and valid contract in equity, and asking that it be specifically executed.
That this bond as executed is void at common law, for the reason assigned, is unquestionable, and if a suit were *497 brought upon it for the penalty, Samuel Dickens, or his personal representative, might certainly plead, non est factum. But this is upon a stern and inflexible principle of the common law, which has always attached great sanctity to a seal, and has required great solemnity in the execution of contracts to which it is attached; and, therefore, upon the ground that a stream cannot run higher than its fountain, it has always held that an attorney or agent not empowered by a sealed authority, cannot bind his principal by seal. And all this is very right at law, because a contract by seal has many advantages over those without seal; a consideration is imported thereby, which cannot be controverted at law, and no statute of limitations bars a recovery upon it, but only lapse of time which raises a presumption of satisfaction. Therefore, there was much reason for the adoption of the principle that an agent by parol should not bind his principal by deed.
But courts of chancery look upon this subject in a somewhat different light, dealing, as it does, more with substance than with forms; it recognizes no such ■ sanctity of sealed instruments, and permits them to be attacked and set aside as readily as contracts without seals, with one particular exception, that is, that they apply the statute of limitations in regard to them, as it is done at common law; but this is because courts of chancery enforce statutes of limitations as a common law defence, whilst it is bound not by the statutes to allow, but as a matter of right consistent with the mode of proceeding in .chancery, and in analogy to the practice of the courts of common law.
But, most unquestionably, a court of chancery for any other purpose will not regard a seal, when the instrument *498 receives no additional or higher power or validity from it; but will treat it in the manner as if it had not been attached thereto. Indeed, it is very probable, I think I might almost say certain, that a court of law would do the same; for if a man appoint an agent by parol to sell a slave, and he execute a bill of sale under seal, I can see no reason why it should be held void in a court of law, because a bill of sale without a seal is as effec-sual to pass title to a slave as if it were sealed; a seal gives no additional validity to it, and creates no super-added obligation upon the vendor, and may, as I think, be regarded as surplusage.
Under the statute of frauds and perjuries, a writing signed by the person to be charged, or some one legally authorised by him, is necessary to the valid execution of a contract for the sale of lands; but it is not necessary that this written contract of sale should be under seal; and therefore it is not necessary that the authority appointing an agent to execute it should be: a parol authority has always been held sufficient for this purpose. It is unnecessary to observe, that a contract to sell is a very different thing from a contract of sale which is evidenced by a deed of bargain and sale, and which must be under seal, and if executed by an attorney in fact, he must be empowered to do so by a sealed authority.
In as much then as a contract to sell need not be under seal, and a court of chancery will as readily execute specifically such a contract without a seal as with it, the fact that a seal has been attached without authority cannot vitiate it, and the seal will be disregarded by the court, This is consonant with reason and right; and in this particular case it is exceedingly meet and proper to *499 see that it should be done; the great length of time "which has elapsed since this contract was entered into; the fact that the purchasers have ever since been in the uninterrupted possession of the land; that they have again and again sought and obtained indulgence for the payment of the purchase money; the fact that Dickens was, during his life time, always ready and willing to convey the land upon the payment of the money; and that his personal representatives have been equally willing to do so since his death; all these things make this a very proper case for a specific performance of the contract as asked in the cross bill. Though we readily admit that the right to a specific performance of a contract should in its inception be mutual, and that it could not, therefore, be decreed for the complainants in the cross-bill, provided it could not have been done for the complainants in the original bill, because of the seal affixed to the bond, yet, holding as we do that the seal constitutes no obstacle to a specific execution of the contract, at the instance of either party, we decree accordingly.